UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

JUAN LOPEZ,

       Petitioner,

v.

                                   Civil No. 4:19cv5
                              Criminal No. 4:15cr14

UNITED STATES OF AMERICA,

       Respondent.

## OPINION AND ORDER

This matter is before the Court on Juan Lopez's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, ECF No. 87, and associated motions seeking discovery and seeking to "File Oversized Brief," ECF Nos. 89, 98. The Court has reviewed the parties' submissions and concludes that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to relief. See R. Gov. § 2255 Proc. for U.S. Dist. Cts. 8(a). Additionally, the Court finds that: (1) additional discovery is unnecessary; (2) the appointment of counsel is unnecessary; and (3) Petitioner is permitted to submit, and the Court fully considers, the brief that exceeds the page limit established by Local Rule. For the reasons set forth below, Petitioner's § 2255 motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On March 11, 2015, a grand jury returned an indictment ("the first Indictment") charging Petitioner with one felony sex

offense: Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(b). ECF No. 1. On May 11, 2015, a Superseding Indictment ("the second Indictment") was filed adding Count Two: Making a False Statement, in violation of 18 U.S.C. § 1001. ECF No. 15. On July 22, 2015, a Second Superseding Indictment ("the third Indictment") was filed, with such new charging document retaining the False Statement count but charging a far more serious offense in Count One: Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(b). ECF No. 24. In the first and second Indictments, Count One carried a maximum punishment of two years imprisonment, 18 U.S.C. § 2244(b), whereas in the third Indictment, Count One carried a maximum of life imprisonment, 18 U.S.C. § 2241(b). The facts underlying the charges against Petitioner arose out of a sexual assault that Petitioner, a Registered Nurse, committed against a patient-victim during the course of his employment. Petitioner subsequently made false statements to investigating agents about the sexual assault.

Shortly after the return of the first Indictment, Petitioner retained attorney Stephen Plott as counsel. ECF No. 9. Through both formal and informal plea offers/counteroffers, Petitioner rejected the Government's offer that he plead guilty to the first Indictment, and further rejected an offer that he plead guilty to both counts of the second Indictment. Trial Tr. 6-12. A guilty plea to the first Indictment would have subjected Petitioner to a

maximum sentence of two years imprisonment, and a plea to the second Indictment would have subjected him to a maximum sentence of ten years imprisonment.   During plea discussions, Petitioner proposed pleading guilty to a lesser (uncharged) assimilated state assault charge that was not a sex offense, but the Government rejected such counter-offer.   Id. at 6, 9-10.   Defense counsel reported in open court on the first day of trial that Petitioner elected not to accept the Government's plea offers as to either the first or second indictment, and that his decision as to the first Indictment (which charged a crime carrying a maximum of only two years imprisonment) was made with the knowledge that the Government was preparing to pursue a superseding indictment that would add a false statement count under 18 U.S.C. § 1001.[1]   Id. Petitioner confirmed, under oath and on the record, that his attorney brought both plea offers to him.   Id. at 10-12.

No plea offer was made by the Government as to the third Indictment, and Petitioner pled not guilty to the charges and proceeded to a trial by jury.   ECF No. 27.   At the conclusion of the jury trial, the jury returned a verdict of guilty as to both counts in the third Indictment.   ECF No. 51.

---

[1] Defense counsel further indicated that after the Second Indictment was returned, defense counsel continued to negotiate with the Government in an effort to avoid the sex offense charge seeking a plea offer to a lesser non-sexual assault charge and the lying to a federal officer charge.   Trial Tr. 7-8.   The Government not only rejected such proposal, but superseded a second time to charge a far more serious sex offense in the third Indictment.

In the presentence investigation report ("PSR") prepared in this case, Petitioner's advisory Guideline range was calculated to be 292-365 months imprisonment.   ECF No. 57 ¶¶ 79-80.   The Government requested a downward variance sentence of 240 months, and defense counsel requested a downward variance sentence of 144 months.   ECF No. 61, 62.   Petitioner was ultimately sentenced to 204 months imprisonment, and was ordered to pay restitution of $122,211.24.   ECF No. 65.

Petitioner timely appealed his conviction and the Fourth Circuit affirmed.   ECF No. 79; United States v. Lopez, 689 F. App'x 732, 735 (4th Cir. 2017).   Petitioner thereafter filed a petition for writ of certiorari, and on January 8, 2018, the United States Supreme Court denied the petition.   Lopez v. United States, 138 S. Ct. 705 (2018).

Petitioner timely filed the instant § 2255 motion alleging that defense counsel provided ineffective assistance.   ECF No. 87. Petitioner also seeks an evidentiary hearing, id. at 22, asks for appointment of counsel, id. at 25, and filed a separate motion to exceed the page limit established by Local Rule, ECF No. 89.   The Government filed a brief in opposition to Petitioner's § 2255 motion, and secured an affidavit from defense counsel responding to Petitioner's claims.   ECF Nos. 95, 96.   Petitioner thereafter filed a reply brief and a renewed motion for discovery.   ECF Nos.

97, 98. Having been fully briefed, Petitioner's § 2255 motion and associated filings are ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

Although a petitioner advancing new claims asserted for the first time in a § 2255 motion must generally "clear a significantly higher hurdle than would exist on direct appeal," United States v. Frady, 456 U.S. 152, 166 (1981), a freestanding claim of ineffective assistance of counsel is properly asserted for the

5

first time in a § 2255 motion, see United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'") (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992)). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (citing Massaro v. United States, 538 U.S. 500, 504-06 (2003)).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "Vague and conclusory

allegations contained in a § 2255 petition" are insufficient to carry a petitioner's burden under Strickland, and such allegations may therefore "be disposed of without further investigation by the District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (quotation marks and citation omitted).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381–82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all

the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" <u>Tice v. Johnson</u>, 647 F.3d 87, 102 (4th Cir. 2011) (quoting <u>Strickland</u>, 466 U.S. at 690). Attorneys are permitted to "be selective and strategic without risking an ineffective assistance of counsel claim," as demonstrated by the well-established and consistent Fourth Circuit precedent holding that the law does "not penalize attorneys for failing to bring novel or long-shot contentions." <u>United States v. Mason</u>, 774 F.3d 824, 828, 830 (4th Cir. 2014) (citations omitted).

The second prong of <u>Strickland</u> requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. If a petitioner fails to prove either of the two prongs of the <u>Strickland</u> test, the court need not evaluate the other prong. <u>Moore v. Hardee</u>, 723 F.3d 488, 500 (4th Cir. 2013).

The prejudice prong of the <u>Strickland</u> test is slightly modified when a petitioner challenges trial counsel's handling of plea negotiations. In such circumstances, petitioners must typically "demonstrate a reasonable probability that (1) 'they

would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . .'" Merzbacher v. Shearin, 706 F.3d 356, 366 (4th Cir. 2013) (quoting Missouri v. Frye, 566 U.S. 134, 147 (2012)); see Lafler v. Cooper, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

### III. DISCUSSION

Petitioner's motion advances numerous subclaims contained within two primary claims, both of which assert that Petitioner's conviction and sentence are unconstitutional based on the violation of his right to the effective assistance of counsel. Petitioner's first claim, as set forth in his motion and memo, ECF Nos. 87, 88, appears to asserts the following subclaims:

> (1) counsel provided ineffective assistance for failing to investigate the facts of the case and failing to advise Petitioner on whether to accept a plea agreement, ECF No. 87 ¶¶ 24-26, 29, 36, 40; and

> (2) counsel provided ineffective assistance for failing to explain the likelihood of a conviction, failing to discuss the benefits of pleading guilty, and failing to advise Petitioner that he could plead "nolo contendere," all leading to both an involuntary decision to proceed to trial and an elevated sentence, id. ¶¶ 27-28, 30, 32-35, 36A, 37-39, 41-50, 52;

Petitioner's second claim, while at times duplicative of his first claim, generally asserts the following subclaims:

(1) counsel provided ineffective assistance for failing to file a motion to suppress or object to certain evidence, id. ¶¶ 53-54, 54D, 54J-K;

(2) counsel provided ineffective assistance for failing to investigate or present certain exculpatory evidence and/or testimony at trial and sentencing, id. ¶¶ 54-54C, 54E-I;

(3) trial and appellate counsel provided ineffective assistance regarding sentencing matters and/or failing to investigate or present the strongest issues on appeal, id. ¶ 55A, 56;

(4) trial counsel had a "conflict of interest," as counsel wished to proceed to trial to obtain a larger fee, id. ¶¶ 31, 57; and

(5) the cumulative effect of these errors resulted in prejudice, to include an elevated sentence, id. ¶ 55, 58.

### A. Claim One

#### 1. Failure to Investigate

Petitioner first argues that trial counsel provided ineffective assistance by failing to investigate the facts of the case and failing to advise Petitioner on whether to accept a plea agreement or proceed to trial.  As explained below, the record before the Court is sufficient to demonstrate that trial counsel's performance was not constitutionally deficient.

First, defense counsel's affidavit explains his investigation in detail, including gathering information from Petitioner via in-person meetings, telephone calls, emails, and text messages.  ECF No. 95-1 ¶ 1.  Counsel gathered and reviewed materials from the

Virginia Board of Nursing's separate investigation, reviewed the discovery provided by the Government, and consulted the Assistant United States Attorney and witnesses identified by Petitioner. Id.  Counsel then advised Petitioner of the facts and allegations, the elements that the Government would have to prove, and potential outcomes based on the evidence.  Id. ¶ 2.

In contrast to such detailed factual allegations from counsel, Petitioner offers numerous conclusory assertions advanced on "information and belief," with these broad unsworn statements challenging the thoroughness of counsel's investigation without clarifying which material facts should have been uncovered through a more thorough investigation.  See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.") (citation omitted).[2]  Notably, at all relevant times, the essence of this case was: (1) the victim's account of the sexual assault (ultimately, a question of credibility); (2) Petitioner's denial of wrongdoing (ultimately, a question of credibility); and (3)

---

[2] Petitioner does not offer his own sworn statement of facts regarding counsel's investigation, nor does he offer the affidavit of any other witnesses or potential witnesses.  See ECF No. 87, at 28, 30 (outlining which facts Petitioner swears to be true and correct, and which facts he advances based on "information and belief").  Moreover, even if Petitioner purported to swear to the truth of the facts he alleges on "information and belief" in support of his failure to investigate claim, some of Petitioner's statements regarding what counsel purportedly failed to do appear to be outside of Petitioner's personal knowledge.

Petitioner's inculpatory admission to agents, followed by his explanation why such admission was involuntary (ultimately, a question of credibility).  Based on this record, Petitioner fails to demonstrate constitutionally deficient performance because counsel's uncontradicted facts reveal that his preparation was well within the bounds of reasonable performance.  Cf. Holmes v. United States, No. 2:16cr94, 2019 WL 2195232, at *10 (E.D. Va. May 21, 2019) (discussing the adequacy of a similar level of investigation).  Petitioner has therefore failed to satisfy Strickland's first prong.

Alternatively, for the reasons discussed in greater detail below, even if the Court assumes that counsel was deficient, Petitioner fails to demonstrate Strickland prejudice (i.e., that there is a reasonable probability that he would have pled guilty had counsel been better prepared), as the record illustrates Petitioner's persistent decision to plead not guilty in the face of any sexual assault charge, even when the maximum punishment was only two years imprisonment.  ECF No. 77, at 6-12.  Petitioner admitted under oath that his lawyer informed him of the likely sentence of one to two years for such initial indictment, yet he was unwilling to admit his guilt to such charge.  See ECF No. 87 ¶ 36A ("Counsel initially quoted Mr. Lopez 1 to 2 years sentence for the initial charges . . . .").  For these reasons, Petitioner's

subclaim premised on trial counsel's purported failure to investigate is denied.

## 2. Failure to Advise on Plea Agreement

Next, Petitioner advances various subclaims that can be generally categorized as alleging that defense counsel provided ineffective assistance by failing to provide Petitioner with critical information regarding the plea and/or sentencing process.

### a. Conviction Rates

Petitioner first states, on information and belief, that counsel provided ineffective assistance by failing to tell Petitioner: (1) that "he had only about 1 chance in 8, and probably substantially less chance than that, of walking out of court free"; or (2) "the government's actual conviction rate after federal criminal trials." ECF No. 87 ¶¶ 27, 30. As the cases cited by Petitioner demonstrate, counsel is required to provide a sufficient amount of information regarding trial risks so that a defendant can make an intelligent decision. However, counsel is not required to provide statistics or conviction percentages. See, e.g., United States v. Geraldo, 523 F. Supp. 2d 14, 22 n.8 (D.D.C. 2007) ("Defendant's identification of trial statistics is both irrelevant and speculative. Cases are resolved on a case-by-[c]ase basis — not by reference to some predetermined conviction rate."). Here, even assuming that Petitioner's unsworn allegations and speculation regarding the odds of a conviction are

accurate, counsel's performance did not fall below an objective standard of reasonableness.   Counsel's affidavit states that he "discussed with Lopez the positive and negative aspects of the facts and circumstances and potential outcomes base[d] upon those positive and negative aspects of the evidence."   ECF No. 95-1 ¶ 2. Counsel "made a particular effort to emphasize the impact [Petitioner's prior] admission to touching the victim would have on the trier of fact."   Id. (emphasis added).   In light of such detailed sworn statements, which do not conflict with any detailed sworn facts offered by Petitioner, the current record is sufficient to demonstrate that counsel performed within constitutional bounds on this issue.   Petitioner therefore fails to satisfy Strickland's first prong.   Cf. Dyess, 730 F.3d at 359 ("Vague and conclusory allegations contained in a § 2255 petition" are insufficient to carry a petitioner's burden under Strickland, and may "be disposed of without further investigation by the District Court.")

Alternatively, even assuming that counsel was deficient for failing to provide statistical estimates, Petitioner fails to demonstrate a reasonable probability that statistical advice would have changed the outcome of the plea process, particularly because Petitioner rejected a plea offer that would have resulted in a maximum punishment of two years imprisonment with the knowledge that the Government was pursuing more serious charges.

### b. Sentencing Estimates

Petitioner next claims, under oath, that "[c]ounsel initially quoted Mr. Lopez 1 to 2 years sentence for the initial charges and 10-12 years maximum time for the superceding [sic] charges.  He NEVER mentioned 20 plus years."  ECF No. 87 ¶ 36A (capitalization in original).  Assuming that counsel made the alleged predictions regarding the likely sentence in this case, Petitioner fails to demonstrate that counsel's estimates were constitutionally deficient.  As Petitioner notes, such estimates were made "initially," and counsel likely could not have known at the time which Guideline enhancements would prove applicable in the case. Moreover, counsel's estimates presumably considered the nature of the allegations and Defendant's background, and his view as to the likelihood that the sentencing judge would vary below any applicable Guideline range.[3]  It was therefore facially reasonable for counsel to originally estimate a sentence of "1-2 years" when the maximum sentence was two years, and "10-12 years" when the third Indictment was returned, believing that a sentence of "twenty years or more" was not likely based on the case-specific facts (and notably, while the Guidelines ultimately called for more than twenty years, the sentence imposed was less than twenty years).

---

[3] Further supporting the constitutional reasonableness of defense counsel's estimate, even the Government asked for a downward variance at sentencing, which is not a common occurrence in the Norfolk or Newport News Divisions of this Court.

It is true that "'[f]ailing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by Strickland," United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004) (citation omitted); however, here, counsel's affidavit states that he discussed the statutory punishment range with Petitioner, the Guidelines in general and as they applied to this case, and the effect of "acceptance of responsibility" on the Guidelines.  ECF No. 95-1 ¶ 2.  Petitioner offers no sworn statement to the contrary, and thus fails to highlight a constitutional deficiency with counsel's performance with respect to the sentencing estimate he provided.

Alternatively, even if the Court assumes that counsel performed deficiently by underestimating the likely sentence, Petitioner fails to demonstrate a reasonable probability that, but for such error, he would have pled guilty (and thus fails to demonstrate Strickland prejudice).  First, earlier in the case, Petitioner rejected plea offers to charges that would have subjected him to no more than 2 years and no more than 10 years imprisonment, with the record suggesting that key factors during plea negotiations were whether Petitioner would be convicted of a sexual assault and whether he would be convicted of a felony that caused him to lose his nursing license.[4]  Second, Petitioner admits

---

[4] As previously noted, Petitioner confirmed in open court that his lawyer had discussed the Government's plea offers with him and that he understood all of the plea discussions – nevertheless, he elected to reject such offers

that he proceeded to trial after his lawyer predicted that he would receive up to twelve years imprisonment if convicted on the elevated charges, and he ultimately received seventeen years – a difference that Petitioner fails to demonstrate would have materially changed the plea calculus with respect to the third Indictment, particularly because no plea offers were ever made by the Government as to the third Indictment.

Consistent with the summary provided by another judge of this Court in Addy v. United States, No. 1:13cr57, 2014 WL 1088833 (E.D. Va. Mar. 19, 2014):

> There is nothing [in the record] to indicate that counsel failed to adequately represent Petitioner's interests at any point during the underlying proceedings. As best the Court can discern, Petitioner now has buyer's remorse regarding [the jury's verdict] and ultimate sentence. As Judge Wilkinson recently remarked, "buyer's remorse should not be dressed in the garb of an ineffective assistance of counsel claim. " United States v. Jackson, No. 12-6756, 2014 WL 486673, at *9 (4th Cir. Feb. 7, 2014) (Wilkinson, J., dissenting).

Id. at *5.  While Addy involved a § 2255 challenge after a guilty plea, a post-trial attack on counsel's alleged failure to encourage a guilty plea as to all charges is merely the opposite side of the

---

and proceed to trial.  Trial Tr. 11-12. The record also includes additional sworn facts from defense counsel explaining that:
> [Petitioner] steadfastly maintained that he was innocent.  He steadfastly refused any plea that would likely result in incarceration.  He steadfastly refused any plea that would result in a felony conviction because such a conviction would cause him to lose his nursing license.

ECF No. 95 ¶¶ 2-3.  Cf. Trial Tr. 7 (defense counsel's recitation to the Court regarding Petitioner's prior questions about whether a defense plea proposal would involve a plea to a "sexual assault and battery" and whether he would "have to report under the Virginia Sexual registry").

same coin.  See Jackson, 2014 WL 486673, at *9 (Wilkinson, J.,
dissenting) (explaining that "had the lawyer persuaded his client
to go to trial, and a poor outcome ensued, we would have another
ineffective assistance of counsel claim before us" and such
"darned-if-you-do/darned-if-you-don't situation is one in which
ineffective [assistance] claims are the least justifiable").

Accordingly, Petitioner fails to satisfy either prong of the
deferential Strickland standard based on defense counsel's
purported inaccurate prediction regarding sentencing.

### c. Familiarity with the Court

Petitioner next asserts, under oath, that counsel misadvised
Petitioner by stating, among other things, that the judge assigned
to the case would allow counsel to "do things" in court that other
judges would not.   ECF No. 87 ¶ 28.   Petitioner offers no
explanation as to what "things" counsel purportedly promised he
could do, nor how it would impact the trial.   Defense counsel's
affidavit states that he did advise Petitioner that he was familiar
with the assigned judge, but denies stating that the judge would
allow him to do things that other judges would not.   ECF No. 95-1
¶ 3.

Assuming that Petitioner's version of the relevant statements
is accurate,[5] Petitioner fails to demonstrate that it was

---

[5] Because it is generally improper to resolve conflicting sworn statements
on the papers, the Court assumes that defense counsel made such statement
solely for the purposes of resolving this claim of error.

constitutionally deficient for counsel to state that: (1) the defense "wanted" the judge that was already assigned to the case; (2) counsel knew the judge from past practice; or (3) the assigned trial judge would let counsel "do things [in court] other judges won't." ECF No. 87 ¶ 28. Such statements, even when considered collectively, fail to rise to the level of promising a favorable outcome, or otherwise suggesting that the assigned judge would give such a degree of improper and undue favor to defense counsel that it should impact the plea calculus.

Alternatively, even assuming that the alleged statements amounted to deficient performance, Petitioner fails to demonstrate a "reasonable likelihood" that such statements played a significant part in his decision to proceed to trial. Notably, the Government was not offering any plea deal to lesser charges at any of the three stages of indictment, and at no time had Petitioner indicated a willingness to plead "straight up" to all the charges, even when facing only two years imprisonment and knowing about the prospect of a superseding indictment with more serious charges. Moreover, it is uncontested that defense counsel explained to Petitioner the respective roles of the judge and jury, and the "role of the trier of fact," ECF No. 95-1 ¶ 2, thus making him aware that the jury, and not the purportedly "favorable" judge, would ultimately be rendering the final decision as to guilt.

Although the question of whether a petitioner "would have" pled differently under different circumstances is "a subjective question, the answer to that question must be reached through an objective analysis." Mitchell v. United States, No. 4:12cr10, 2017 WL 6031813, at *5 (E.D. Va. Dec. 5, 2017) (quoting Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988)).  As this Court further explained in Mitchell:

> Objective factors relevant to the prejudice analysis include: (a) "the potential strength of the government's case"; (b) "the disparity between the government's plea offer and a petitioner's sentencing exposure if convicted at trial"; and (c) a petitioner's "repeated protestations of innocence throughout trial." Wolford v. United States, 722 F. Supp. 2d 664, 691 (E.D. Va. 2010) (internal citations and quotation marks omitted). While it appears to remain unresolved in this Circuit whether a petitioner can establish prejudice solely through his own hindsight testimony about his plea decision, or whether independent objective evidence must also be presented, the Fourth Circuit has recognized that a petitioner's post-hoc and "self serving assertion that he would have accepted the plea is, as both the state and federal courts recognized, the type of testimony . . . subject to heavy skepticism." Merzbacher, 706 F.3d at 366–67 (citations and quotation marks omitted) (omission in original). . . .

Id. at *5.  Here, the Court easily concludes from the objective evidence, including both the sworn statements at the outset of trial regarding plea negotiations and the absence of any plea offers from the Government other than pleading "straight-up" to all the charges pending at the time, that Petitioner's post-hoc suggestion that his plea decision was materially affected by a vague statement from his lawyer that the judge would allow extra

leeway at trial (particularly when the factfinder would be a jury, not the judge) fails in the face of objective record evidence and does not warrant an evidentiary hearing.[6]

### d. Nolo Contendere/Acceptance of Responsibility

Next, Petitioner asserts on "information and belief" that counsel failed to, but should have, informed Petitioner that he could enter a plea of "nolo contendere" without impacting his ability to raise Guideline defenses at sentencing.  ECF No. 87 ¶¶ 32-35, 52.  Petitioner further claims that this Court would likely have been required to accept such a plea, and that Petitioner "could likely" receive a 3-level credit under U.S.S.G. § 3E1.1 for "acceptance of responsibility" upon entry of a nolo contendere plea.

First, there is no evidence in the record to suggest that the Government would have offered or agreed to a plea of nolo

---

[6] As previously noted, the outcome of this case was a matter of witness credibility.    In considering the "objective" § 2255 record against Petitioner's post-hoc statements, the Court notes that even Petitioner's post-hoc statements are less then compelling.  Notably, Petitioner asserts in ECF No. 87 ¶ 29 that the evidence against him at trial was an "overwhelming amount and quality of evidence" in an effort to attack counsel's performance. However, at ¶ 11 of the same document, Petitioner's states that the trial evidence "was riddled with lies, half-truths, inconsistencies, innuendos, inferences from inferences, and questionable circumstantial evidence."  To the extent that the trial evidence was based on inconsistencies, innuendos, inferences from inferences, questionable circumstantial evidence, and the credibility of the alleged assailant versus the victim, the reasonableness of Petitioner's election to precede to trial is evident, particularly when the only apparent "risk" was losing acceptance of responsibility.  Moreover, were Petitioner both risk averse and willing to admit his guilt, he would have likely pled guilty when the maximum punishment was only two years or only ten years.

contendere. See ECF No. 96 at 7 (indicating that the prosecuting attorney could not offer a nolo contendere plea without obtaining special approval); cf. Minor v. United States, No. 1:09cr210, 2012 WL 488262, at *11–12 (E.D. Va. Feb. 13, 2012) (observing that "the United States' policy is not to offer or to consent to nolo contendere pleas, absent highly unusual circumstances"). Moreover, given the nature of the sexual assault involved in this case, this Court would likely have rejected any proposal to enter a nolo contendere plea. Cf. Fed. R. Crim. P. 11(a)(3) ("Before accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice.").[7] Counsel was not deficient for failing to pursue a plea option that had little chance of success.

Second, the Court notes that Petitioner's suggestion that he would have freely accepted the opportunity to pled guilty as a "nolo contendere" plea appears to misunderstand the nature/impact of such a plea. A "plea of nolo contendere is an admission of guilt which can subject the defendant to the same punishment that he would have received on a plea of guilty," with the benefit being that a nolo contendere plea "is not admissible against the defendant in a subsequent civil action." United States v. Dorman, 496 F.2d 438, 440 (4th Cir. 1974) (emphasis added). Petitioner

---

[7] This Court likewise would have likely rejected an "Alford plea," and even if such a plea were accepted, absent a clear admission of guilt, no credit for acceptance of responsibility would be available at sentencing.

would have had the same repercussions if he pled guilty to a felony sex offense through a "nolo contendere" plea as he would had he entered a routine guilty plea. Petitioner's consistent decision to proceed to trial while the maximum punishment was escalating from 2 years to 10 years to life, rather than enter a plea of guilty, as well as his decision to deny his guilt before trial, under oath at trial, and at sentencing, all undercut his post-hoc contention that he would have admitted his factual guilt had he only been offered a form of plea that would insulate him from civil liability.[8]

Third, at the time Petitioner elected to proceed to trial, the only apparent benefit to pleading guilty would have been a sentencing credit for acceptance of responsibility. Regardless of the type of plea, the Court would not award such a credit unless Petitioner freely admitted that he sexually assaulted the victim. Petitioner's newly advanced assertion that he would have freely admitted guilt to an aggravated sexual assault against a vulnerable victim, an offense he swore he did not commit, in exchange for a sentencing concession that may have reduced his sentence by approximately 2-5 years does not square with the uncontested fact

---

[8] Petitioner was required to pay over $120,000 in restitution to the victim in his criminal case and Petitioner's filings fail to suggest either that: (1) there was ever a prospect of a subsequent civil action; or (2) that his decision-making process in this criminal case was influenced by a hypothetical civil action.

that Petitioner turned down prior opportunities to plead guilty to lesser charges that carried a far lesser punishment.

Petitioner has therefore failed to demonstrate a reasonable probability that "the outcome of the plea process would have been different" had counsel informed him of the possibility of a nolo contendere plea and/or the possibility to receive a credit for acceptance in conjunction with such type of plea. Holmes, 2015 WL 402957, at *9 (quoting Lafler, 566 U.S. at 163). For all of these reasons, Petitioner's first habeas claim, and all associated subclaims, is **DENIED**.

### B. Count Two

### 1. Failure to Suppress or Challenge Evidence

### a. Motion to Suppress

Petitioner first advances the conclusory assertion that his attorney was deficient for failing to file a motion to suppress, presumably referring to suppression of Petitioner's inculpatory statements to agents. Defense counsel's affidavit indicates that he did not file a motion to suppress because the evidence would not support a finding that the statements were unconstitutionally obtained or involuntarily made. ECF No. 95-1 ¶ 5. Petitioner offers no evidence or compelling argument to counter such statement and/or offer a valid basis for suppression, and on this record, it is readily apparent to the Court that counsel made a constitutionally reasonable decision not to pursue a fruitless

motion.   Moreover, even if such motion had been filed, it would have been denied regardless of whether, as Petitioner asserts, agents referenced a punishment of "ten years" during Petitioner's interview.   See Grueninger v. Dir., Virginia Dep't of Corr., 813 F.3d 517, 530 (4th Cir. 2016) (indicating that the Strickland prejudice analysis considers whether a motion to suppress would have been "meritorious" such that it "likely would have been granted" had it been advanced by counsel).

### b. Failure to Object to Evidence

Petitioner next argues that trial counsel failed to present available material evidence and failed to object to the unlawful admission of hearsay and other inadmissible evidence.   ECF No. 87 ¶¶ 54, 54D, 54J-K.

### i. The Victim

Petitioner argues that he was prejudiced when defense counsel failed to object to the victim's testimony indicating that there was a hair in her underwear after the assault.   At trial, the victim testified that "[t]he Morphine had worn off more where I could move now, and I pulled my pants and my underwear down and I noticed that there was bright blood on my underwear, and that there was a hair."   Trial Tr. 249.   As a general matter, testimony of relevant facts that were personally witnessed is admissible.   Fed. R. Evid. 401, 602.   Here, the key question is whether the hair was a "relevant" observation, it need not be "incriminating" or

forensically linked to Petitioner (as he now argues) in order to be relevant to the assault.  Petitioner offers no valid basis for counsel challenging its relevancy, and thus, Petitioner fails to demonstrate that his lawyer committed any error by failing to object.  Further, because a baseless objection to the victim's testimony about her own observation would have been overruled, Petitioner fails to demonstrate Strickland prejudice.

To the extent that Petitioner claims that counsel should have done more to demonstrate that the hair was not forensically linked to Petitioner, such assertion is exactly the type of hindsight second-guessing of trial strategy that the Supreme Court has cautioned district courts to avoid.  Strickland 466 U.S. at 689. Neither the prosecution nor the victim linked the hair to Petitioner, and defense counsel could reasonably have made a strategic decision to not draw further attention to the hair. Petitioner's claim clearly fails to satisfy either prong of Strickland.

### ii. Witness Kinkade

Next, Petitioner argues that counsel erred by permitting the victim's caregiver and former husband, Benjamin Kinkade, to testify.  Petitioner asserts that because Kinkade never saw him in the hospital, it was error to allow Kinkade to describe Petitioner and/or identify him in Court.  Petitioner's claim is without merit as counsel was not constitutionally deficient for allowing Kinkade

to identify Petitioner because it was undisputed at trial that Petitioner was the "male nurse" that treated the victim on the day that she was assaulted.  Similarly, no prejudice flowed from such alleged error for the same reason – Petitioner never denied treating the victim, he denied assaulting her.

### iii. Petitioner's Background

Finally, Petitioner argues that counsel erred by failing to object during the Government's cross-examination of Petitioner regarding Petitioner's prior military career and professional nursing experience, which purportedly depicted Petitioner as a "stern and obstinate individual."  ECF No. 87 ¶ 54K.  Petitioner offers no basis for his lawyer to have made a valid objection, and thus fails to demonstrate constitutionally deficient performance.  Moreover, even if a valid objection could have been made, Petitioner fails to demonstrate a reasonable likelihood that such an objection would have been sustained, and even if it were sustained, the Court easily concludes that there is not a reasonable probability of a different trial outcome had such testimony been excluded.  Defense Counsel's affidavit, and the "voir dire" of Petitioner at trial both illustrate that Petitioner knew that he would be subject to cross-examination, and that Petitioner "chose for himself to testify at trial."  ECF No. 95 ¶ 4.

For the reasons stated above, Petitioner's motion is denied to the extent it challenges defense counsel's failure to file a suppression motion and/or failure to object to certain evidence as such subclaims fail to satisfy either prong of Strickland.

## 2. Exculpatory Evidence

While at times difficult to categorize, Petitioner advances numerous subclaims alleging counsel rendered ineffective assistance for failure to obtain or present various forms of exculpatory evidence. The Court endeavors to address each argument below, but to the extent an argument is not expressly discussed, the Court has carefully reviewed and considered each subclaim, and finds that: (1) none of the subclaims, many of which are based on unsworn facts, warrant an evidentiary hearing; and (2) none of such subclaims satisfy either prong of Strickland.

### a. Hospital Policies

Petitioner claims ineffective assistance based on counsel's failure to present evidence to the jury regarding certain purported hospital policies. Namely, counsel failed to: (1) demonstrate that the victim was in a room by herself because the hospital had a "strict" policy of not allowing minors in the treating area and that minors cannot be left unattended in a waiting room; and (2) call an expert witness to testify that nurses educate patients before providing a medication in light of the dispute at trial

regarding whether Petitioner administered morphine over the victim's objections.

As to the first policy, Petitioner does not present a copy of such policy or an affidavit from a co-worker that could have been discovered by trial counsel.  Moreover, even assuming that the policy exists, Petitioner contends that such policy would have proven that Petitioner was "not singled out by her behavior" on the day she was assaulted but was in a room alone throughout her treatment due to the policy (the victim's ex-husband/caregiver remained in the waiting room with the victim's minor daughter during the assault).  While such policy may have supported Petitioner's version of events to some degree, it is unclear from his § 2255 filings how such fact would have materially advanced his case.  Moreover, the value of the policy appears to have been greatly diminished by the victim's testimony that the nurse that cared for her after Petitioner completed his care brought the victim's caregiver into her room as soon as she requested it. Trial Tr. 248.  Accordingly, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice based on counsel's failure to present this policy to the jury.

Similarly, having an expert witness testify regarding "education" would only have established that nurses generally educate patients about medications before administering the medications; here, it was strategically far more important for the

defense to present, through Petitioner's testimony, that he educated the victim about her drug allergies, that she was not allergic to morphine, that she had received morphine in the past, and that Petitioner confirmed with the treating doctor that morphine should be administered. Trial Tr. 332-35. Such testimony was bolstered by the testimony of the treating physician. Id. at 405. Petitioner's hindsight attack regarding counsel's decision not to present additional evidence on this minimally probative practice/policy fails to demonstrate constitutionally deficient performance. See Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987) ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another"). Moreover, Petitioner fails to demonstrate a reasonable probability that the jury would have acquitted him if they had known more about either of these policies/practices, which are at best tangential to the key issues in Petitioner's case — whether Petitioner administered morphine without the victim's consent and then sexually assaulted the victim.

### b. Special Agent O'Neil

Next, Petitioner argues that counsel rendered ineffective assistance by failing to effectively cross-examine Special Agent Katie O'Neil regarding whether Agent O'Neil and other investigators had coerced him into confessing by threatening a lengthy sentence and whether O'Neil had made a statement that the

victim's report of the assault was "all over the place" such that

the investigators "did not know what to believe."   ECF No. 87

¶ 54I.   At trial, Agent O'Neil testified as follows on rebuttal:

> Q. Now let's go to the post-polygraph interview with the
> defendant.  You heard his allegation that you told him
> he should – or you were present when he was told that,
> to get out from under his lie, he had to confess to the
> digital penetration of the victim.  Did you hear that
> testimony?
>
> A. Yes, I heard that.
>
> Q. And that he was exposed to 10 years for lying, but
> that if he admitted to digitally penetrating the victim,
> he would get the slap on the wrist. You were here, so
> you remember what he said?
>
> A. I remember what he said.
>
> Q. Let's take that in turn.  Did you or anyone in your
> presence ever mention a 10-year penalty for lying to a
> federal agent?
>
> A. Never.
>
> Q. Do you, as part of interviewing people accused or
> suspected of crimes, do you personally ever talk about
> number of years or penalty involved?
>
> A. I do not.  It's generally counter-productive.
>
> Q. And the situation that the defendant laid out, kind
> of trading, trading this far more serious charge for a
> far lesser charge, is that a tactic that you have ever
> used?
>
> A. No, it is not.
>
> Q. Why wouldn't you use that tactic?
>
> A. It doesn't make, you know, much sense to talk to a
> suspect of an investigation about any kind of penalty
> when you want someone to tell you the truth. That's just
> not something that I would bring up.

Trial Tr. 420-21.  In light of such testimony, Petitioner fails to illustrate that questioning of O'Neil on this point by defense counsel was constitutionally necessary, that it would have convinced her to immediately change her testimony to admit she made a "threat" of lengthy sentence, or that there is a reasonable probability of a different outcome had defense counsel asked Agent O'Neil further questions on this issue.

As to the assertion that counsel failed to ask Agent O'Neil about her purported out-of-court statement that the victim was "all over the place" and investigators "did not know what to believe," Petitioner fails to demonstrate that asking such question would have been a sound strategy or that failing to ask such question was a constitutionally deficient strategy.  Agent O'Neil testified that she interviewed the victim about the assault, created a written "Report of Interview," and provided that document to the prosecution, and that it was produced to the defense.  Id. at 288.  She further testified that the victim told her four days after the assault that the Petitioner had penetrated her with his fingers "approximately 10 times."  Id. at 289.  At trial on cross examination, the victim provided similar testimony, that she was assaulted "at least 10 times."  Id. at 265.  Petitioner fails at this time to present an affidavit from O'Neil, or any other witness, indicating that investigators believed that the victim's

32

account had been inconsistent to the point that Agents, or prosecutors, did not know what to believe. Moreover, Agent O'Neil's rebuttal testimony at trial re-asserted that she interviewed the victim just a few days after the assault, and that since such time, the victim had consistently maintained that she did not want the morphine administered. Trial Tr. 420. Defense counsel's election not to ask questions that could have elicited a response that further bolstered the credibility of the victim was not constitutionally deficient.

Finally, all of Petitioner's allegations regarding counsel's alleged failure to properly question Agent O'Neil is included in a paragraph of Petitioner's filings advanced based on "information and belief." ECF NO. 87 ¶ 54I. For all of these reasons, Petitioner's hindsight attack on his counsel's cross-examination fail to satisfy either prong of <u>Strickland</u>.

### c. The Victim

Petitioner next alleges that counsel failed to obtain the victim's medical and police records, which would demonstrate that the victim lied about certain details of her previous sexual assault in 2000; failed to obtain documentation of the victim's dishonorable discharge from the Air Force for fraudulent enlistment; and failed to present evidence demonstrating that the Sexual Assault Nursing Exam ("SANE") that the victim purportedly testified was performed on her after she was raped in the year

33

2000 was a type of exam that did not exist until 2008.  All of these allegations fail for the same two reasons: (1) Petitioner fails to demonstrate that counsel made a constitutionally unreasonable decision in being tactful in the manner that he treated the vulnerable victim of an alleged sexual assault; and (2) Petitioner's § 2255 motion and memorandum fail to present evidence in the forms of affidavits or documents that support Petitioner's allegations so as to undermine confidence in the outcome of trial by revealing that counsel overlooked evidence that would have benefitted Petitioner's case.[9]

"The extent to which an alleged [sexual assault] victim should be subjected to cross-examination is inherently a matter of strategy, as a withering and relentless cross-examination can easily backfire."  Brewer v. State, 121 F.3d 712 (8th Cir. 1997) (unpublished table opinion).  Here, the Court finds that counsel acted reasonably in declining to pursue additional lines of questioning regarding the victim's background, prior rape, SANE

---

[9] Petitioner's reply brief, mailed on June 10, 2019 and filed on June 18, 2019, appears to have been late.  ECF No. 97.  Moreover, the "supplemental evidence" in the form of a CD-ROM that was mailed by Petitioner nearly a month later was clearly untimely and was not submitted in conjunction with a motion seeking leave to submit additional evidence.  ECF No. 99.  Late evidence is not considered, and pro se litigants are expected to abide by procedural deadlines in the same manner as represented litigants. Regardless, a review of such late-filed evidence reveals that it would not affect the outcome of this case.  The evidence consists of various documents that appear to be aimed at discrediting the victim; however, the documents have no signatory, and there is no notary or sworn testimony as to their veracity.  As such, the persuasiveness of the documents is limited, and the analysis throughout this opinion would not be impacted by such submission.

exam, or related matters in order to discredit the victim. Notably, when discussing defense counsel's legal ability to even cross-examine the victim during the trial regarding the veracity of statements she previously made about the prior rape, the Court stated to counsel, outside the presence of the jury:

> It's a very tough situation, actually, for Mr. Plott to decide whether he wants to go down that road. Because it could elicit such sympathy for the victim in this case that it enures to her benefit, frankly, and to the government's benefit.

Trial Tr. 213. The Court ultimately allowed some limited testimony on such issue, with defense counsel asking the victim if she previously made a false statement about the details of her prior rape and the victim testifying <u>that she did</u>. <u>See</u> Trial Tr. 266 (Q. "Did you make a false statement under oath that you were sexually assaulted in a parking lot by a stranger?" A. "Yes, sir."). Such single question, which was appropriately asked by defense counsel, led to a lengthy and detailed follow-up by the Government that rehabilitated the witness by highlighting that the false statement about the location of the rape, and the identity of the rapist, was made out of fear of reporting that she was raped by her Air Force instructor, with such detailed rehabilitation likely eliciting some degree of sympathy for the victim. Petitioner's post-hoc allegations that defense counsel should have <u>done more</u> to attack the victim fails for multiple reasons, including: (1) it is an inappropriate hindsight challenge to

counsel's sound strategic decision; (2) it overlooks the fact that defense counsel was limited by the Court to focusing only on the known false statements (location and identity) regarding the prior rape; (3) it fails to account for the fact that further attacks on the victim would likely have been counter-productive and further benefited the government; and (4) even if the Court assumes that defense counsel erred, Petitioner's hindsight argument fails to demonstrate a reasonable likelihood of a different outcome.[10]   For all of these reasons, Petitioner's claim of ineffective assistance of counsel fails both prongs of <u>Strickland</u>.

### d. Virginia Nursing Board

Petitioner's next claim is a single sentence based on "information and belief," asserting that defense counsel failed to obtain the testimony the victim provided to the Virginia nursing board.   This speculative assertion appears to be belied by the record as defense counsel states in his affidavit that he received and reviewed full discovery provided by the Government, as well as a report and exhibits from the Virginia Board of Nursing provided

---

[10] Petitioner's associated claims regarding the nature of the victim's discharge from the military likewise fail, as the victim testified that she was honorably discharged, Trial Tr. 252, and nothing in the record suggests otherwise.   Similarly, it is unclear on what basis Petitioner alleges that the victim lied about the type of "exam" she received in 2000 and/or why any incorrect characterization of the exam type was material.   It does not appear that the victim's testimony referenced a "SANE" exam, and even if it did, Petitioner fails to provide facts beyond his own sworn statements demonstrating that such type of exam did not exist until 2008.   While this Court does not rely on Petitioner's late-filed evidence, one document submitted by Petitioner appears to indicate in a handwritten notation that the victim was cleared for a "SANE Evaluation & Exam" in the year 2000.

by the attorney who represented Petitioner before the Board.   ECF No. 95 ¶ 1.   Moreover, even if defense counsel never saw a "transcript" of testimony before the Board, Petitioner does not present such testimony now nor otherwise illustrate that consideration of such testimony would have a reasonable likelihood of changing the outcome of the plea process or trial.   This cursory claim therefore fails both prongs of Strickland.

### e. Emma Santos

Next, Petitioner claims counsel erred by failing to call Emma Santos as a trial witness.   Santos is a nurse and one of Petitioner's former co-workers.   Petitioner asserts that Santos would have testified that she walked into the victim's treatment room as Petitioner completed his exam, that she engaged in a normal conversation with the victim, and that the victim was lucid at all times.[11]   Petitioner, however, fails to substantiate such allegation with an affidavit from Santos, or any other evidence beyond his sworn assertion, and the petitioner's "speculation [of potential testimony] is not sufficient to support an ineffective assistance claim."   Wooten v. Hartwig, 108 F.3d 1380 (7th Cir. 1997) (unpublished table opinion); see Cross v. United States, No.

---

[11] It is not immediately clear whether the victim being "lucid" at all times before and after morphine was administered would have been a strategic benefit to the defense, because while it may have helped with the part of the defense regarding whether the morphine was administered against the victim's will, it would likely have weakened the defense contention that the sexual assault was fabricated by the witness.

2:06cv457, 2007 WL 128964, at *10 (E.D. Va. Jan. 12, 2007) ("A reviewing court should view a claim of ineffective assistance of counsel based on a failure to subpoena witnesses with 'great caution' where, as here, the petitioner does not provide the court with any affidavits from the potential witnesses."); United States v. Bass, 460 F.3d 830, 839 (6th Cir. 2006) (holding that the district court did not err by declining to hold an evidentiary hearing to investigate uncalled witnesses because the defendant "failed to point to any evidence (e.g., affidavits)" of the witnesses' purported testimony).

Even assuming Petitioner is correct regarding the nature of Santos' testimony, Petitioner fails to demonstrate that the decision not to call Santos as a witness was an error of constitutional magnitude. Defense counsel's affidavit reveals that counsel spoke with Santos and Dr. Brian Gruber, and after doing so, counsel made a strategic decision not to call Santos as a witness because "[h]er testimony was inferior to Dr. Brian Gruber's because her knowledge of the events at the hospital was limited." ECF No. 95 ¶ 4. Petitioner offers no evidence to undercut counsel's analysis of the comparative strength of these witnesses nor does he otherwise demonstrate that calling Santos would have had a reasonable probability of changing the outcome of

trial.[12]   See United States v. Galloway, No. 2:11cr96, 2014 WL 584047, at *6 (E.D. Va. Feb. 12, 2014) ("[T]he difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic 'assessment and balancing of perceived benefits against perceived risks'—such strategic decisions must be afforded 'enormous deference.'" (quoting United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004))).

As analyzed above, Petitioner's subclaims predicated on failure to present exculpatory evidence are all denied for failing to satisfy either prong of Strickland.

### 3. Sentencing and Appeal

Petitioner argues that both trial counsel and appellate counsel provided ineffective assistance by failing to investigate sentencing matters and challenge false and unreliable evidence. ECF No. 87 ¶¶ 55, 56.  The only detail provided regarding these broad allegations involves the $122,000 in restitution ordered in this case and this Court's failure to consider Petitioner's alleged alcohol abuse as a mitigating factor at sentencing.

---

[12] A review of Dr. Gruber's testimony reveals that he testified that he saw the victim again after she was medicated and after a splint had been put on her ankle, and she had "calmed down quite a bit," and was not in distress. Trial Tr. 400-01.  He further testified on cross that the patient was not given any medication that she did not want, an assertion that obviously benefited Petitioner.  Id. at 405.

First, as to the sentencing challenges, Petitioner claims for the first time in his § 2255 motion that he abused alcohol around the time he committed the instant offense, and that counsel should have ensured that the Court considered this as a mitigating factor. However, while under oath at sentencing, Petitioner indicated that the PSR had no errors, and that it "fully covers [Petitioner's] background." Sentencing Tr. 6, ECF No. 74. Notably, the PSR states that while Petitioner used to drink alcohol and may even have been a "big drinker" prior to his DUI arrest in 2001, both Petitioner and his family indicated that he "has not consumed alcohol since his Driv[ing] Under the Influence (DUI) conviction." PSR ¶ 61, ECF No. 57. Petitioner's hindsight efforts to attack his own sworn statement with the new assertion that he was a heavy drinker around the time of the sexual assault offense are rejected as "patently frivolous." See United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (indicating that, absent "extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's [prior] sworn statements" are "patently frivolous or false") (internal citations omitted). Moreover, Petitioner fails to establish Strickland prejudice because it is highly unlikely that excessive alcohol use outside the hospital setting would have resulted in a further downward variance in light of the facts of this case.

40

As to restitution, Petitioner's § 2255 filings <u>offer no basis</u> to successfully challenge the restitution calculation, either at the time of appeal or today, and thus fail to call into question trial counsel's handling of restitution in this case. The victim submitted a victim impact statement claiming a loss far greater than $122,000, and the probation officer determined that pursuant to the Mandatory Victim Restitution Act of 1996, the victim was only entitled to approximately $122,000 in restitution. At sentencing, defense counsel objected to signing the restitution order based on Petitioner's assertion of innocence, but noted that the defense had not advanced an objection to challenge the amount of restitution. Sentencing Tr. 66, ECF No. 74; <u>see also</u> ECF No. 95-1 (reflecting defense counsel's sworn statement that he consulted with the probation officer regarding the restitution calculation prior to sentencing and that he discussed the matter with Petitioner). Petitioner therefore plainly fails to demonstrate any error committed by trial counsel and fails to establish any resulting prejudice.

Similarly, to the extent Petitioner makes the conclusory statements that the "strongest" arguments on appeal would have been challenging the absence of an alcohol abuse notation in the PSR or the restitution figure, such conclusory assertions fail on their face. Petitioner fails to demonstrate that either claim is

stronger than the issues raised on appeal, nor does he demonstrate Strickland prejudice.   Smith v. Robbins, 528 U.S. 259, 288 (2000).

### 4. Conflict of Interest

Petitioner's last stand-alone subclaim argues that his trial counsel rendered ineffective assistance because counsel had a "conflict of interest" in that counsel wished to proceed to trial to collect a larger fee.   As discussed above, trial counsel's affidavit and other record evidence reveals Petitioner's consistent position that he did not commit a sexual assault, as well as his unwillingness to admit guilt to any felony sex crime, even when he was facing only two years imprisonment.   Aside from Petitioner's speculative and unsupported allegation, nothing in the record suggests that counsel had a "conflicted" motivation to encourage Petitioner to proceed to trial in order to collect a larger fee.   The Court therefore concludes that such unsupported accusation, advanced based on "information and belief," fails to satisfy either prong of Strickland.

### 5. Cumulative Effect

Finally, Petitioner argues that he has been prejudiced by the cumulative errors of counsel.   For the Court to consider such an argument, Petitioner must have demonstrated multiple constitutional errors by counsel.   Fisher v. Angelone, 163 F.3d 835, 852 n.9 (4th Cir. 1998) (explaining that "legitimate cumulative-error analysis evaluates only the effect of matters

actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient"). The Court has already concluded that counsel did not provide constitutionally deficient assistance. Thus, a cumulative error analysis is inapplicable. See United States v. Russell, 34 F. App'x. 927 (4th Cir. 2002) (observing that, in Fisher, the Fourth Circuit held that "it is not appropriate to consider the cumulative effect of attorney error when the individual claims of ineffective assistance do not violate the defendant's constitutional rights"). Alternatively, even if counsel's purported "deficiencies" were considered collectively (such as the claimed misstatement about his relationship with the presiding judge, or the decision not to call certain witnesses or pursue certain lines of cross-examination) Petitioner fails to undermine this Court's confidence in the outcome of trial.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion is **DENIED in full**. ECF No. 87. Petitioner's motion seeking leave to file an oversized brief is **GRANTED**. ECF No. 89. Petitioner's motion seeking discovery to resolve what he characterizes as disputed issues of material fact is **DENIED**. ECF No. 98.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to his § 2255 motion is **DENIED**. 28 U.S.C.

43

§ 2253(c); see R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. Rule App. Proc. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so within sixty (60) days from the date of this Opinion and Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Newport News, Virginia.

It is so **ORDERED**.

_____
/s/ Mark S. Davis
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July ___30___, 2020